# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 9:17-CV-80016-ROSENBERG/BRANNON

ANASTOYAN MILLER,

    Plaintiff,

v.

U.S. SECURITY ASSOCIATES, INC.,
a/k/a & d/b/a USSA,

    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR RECONSIDERATION

This matter is before the Court on Plaintiff's Motion for Reconsideration and Motion for Rehearing [DE 32] filed on May 8, 2017. The Motion has been fully briefed. For the reasons set forth below, the Motion is granted in part and denied in part insofar as (i) the Court's earlier order of dismissal is vacated and (ii) this case is dismissed without prejudice due to the Court's lack of subject matter jurisdiction over this matter.

The facts before the Court are not complicated. The parties recently engaged in litigation in two separate cases. The instant case (initiated by Plaintiff) was brought before the undersigned. The second case (initiated by Defendant) was brought before Judge Bloom in case number 17-CV-60224. While the instant case was pending, the parties reach a settlement agreement in case 17-CV-60224. That settlement agreement contained a mutual general release. This Court was informed of the settlement between the parties and was provided a copy of the mutual general release. Upon notification of the settlement and upon review of the release, the Court closed and dismissed the instant case.

The Motion before the Court contains two core contentions. The first is that Plaintiff never consented to the instant case being dismissed and, to the extent the Court dismissed this case upon the belief that Plaintiff had consented to the same, the Court's dismissal was in error. The second core contention is that the mutual general release did not release any claims pending in the instant case. Each of these points is addressed in turn.

With respect to the Court's earlier dismissal, the Court did indeed dismiss this case upon the belief that Plaintiff had no opposition to dismissal. The Court's dismissal was in response to a notice of settlement, together with an attached proposed order, filed by Defendant. After the notice of settlement was filed, the Court reviewed the mutual general release executed by the parties in case 17-CV-60224. Upon review of the mutual general release, the Court could see no reason for the instant case to remain open as the parties had mutually released each other from all possible claims. The court file reflected no opposition by Plaintiff to dismissal. The Court's normal practice, upon being notified of a settlement between the parties, is to close a case and enter in any such orders as the parties mutually agree is necessary to bring the matter to a close. However, it is now clear that Plaintiff never agreed for the instant case to be dismissed[1] pursuant to the request of Defendant in the aforementioned notice of settlement. Because the Court's order of dismissal was premised upon its belief that Plaintiff had consented to the entry of dismissal, Plaintiff's Motion is granted in part insofar as the Court's order of dismissal at docket entry 31 is **VACATED**.

The Court now turns to Plaintiff's second contention—that the mutual general release executed by the parties did not affect the Plaintiff's claims in the instant case. The terms of the

---

1 The Court's dismissal was with prejudice because the proposed order in the notice of settlement dismissed the case with prejudice.

mutual general release could not be clearer.  The parties mutually released each other "from any and all claims" and "liabilities of any kind whatsoever" from "the beginning of the world to execution and delivery of" the mutual general release.  While the release does state that it includes claims arising in case 17-CV-60224 it also states that the release is "not limited to" that case.  The terms of the mutual general release are so broad, and so clear, the Court sets forth the terms below to demonstrate such:

# EXHIBIT "A"
# MUTUAL GENERAL RELEASE

Plaintiff, U.S. Security Associates, Inc. ("Plaintiff"), and Defendant, Anastoyan Miller ("Defendant") (Plaintiff and Defendant are collectively, the "Parties," and individually, a "Party") hereby grant to one another this Mutual General Release ("Release") between the Parties and as detailed by the terms and conditions below.

Based upon the Proposal for Settlement accepted by Plaintiff and the mutual promises contained herein, including, but not limited to, the Parties' counsel's execution of the Joint Stipulation for the Entry of an Agreed Order of Dismissal With Prejudice, and other good and sufficient consideration (including, but not limited to payment of $100.00 to Plaintiff), the sufficiency of which is hereby acknowledged by the Parties, the Parties hereby mutually release, remise, acquit, satisfy and forever discharge each other, and their respective employees, agents, officers, directors, representatives, legal representatives, partners, stockholders, heirs, executors, administrators, predecessors and successors in interest, assigns, parents, subsidiaries, divisions, departments, affiliates, insurers, adjusters, franchisors and attorneys, of each (collectively, the "Plaintiff Releasees" and the "Defendant Releasees," respectively) from any and all claims, demands, accounts, reckonings, specialties, controversies, agreements, promises, suits, choses in action, contracts, covenants, claims, bonds, bills, debts, dues, sums of money, commissions, compensation for purported personal services rendered, causes of action, damages, demands, rights and liabilities of any kind whatsoever upon any legal or equitable theory, tortious or contractual (express or implied), common-law, statutory, public policy, federal, state, local, or otherwise) and any basis for recovering costs, fees, or other expenses including, but not limited to, attorneys' fees incurred in these matters upon any legal or equitable theory, tortious or contractual (express or implied), common-law, statutory, public policy, federal, state, local, or otherwise) and any basis

for recovering costs, fees, or other expenses including, but not limited to, attorneys' fees incurred in these matters, whether direct or contingent, liquidated or unliquidated, accrued or unaccrued, known or unknown, suspected or unsuspected, actual or potential, asserted or unasserted, patent or latent, matured or unmatured, which any Party or which any of the Parties' respective employees, agents, officers, directors, representatives, legal representatives, partners, stockholders, heirs, executors, administrators, predecessors and successors in interest, assigns, parents, subsidiaries, divisions, departments, affiliates, insurers, adjusters, franchisors and attorneys (collectively, the "Plaintiff Releasors" and the "Defendant Releasors," respectively), ever had, now have, or hereafter can, shall or may have against the "Plaintiff Releasees" and the "Defendant Releasees," respectively and any of their respective employees, agents, officers, directors, representatives, legal representatives, partners, stockholders, heirs, executors, administrators, predecessors and successors in interest, assigns, parents, subsidiaries, divisions, departments, affiliates, insurers, adjusters, franchisors and attorneys, for upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to execution and delivery of this Mutual General Release.

This Release is a Mutual General Release and includes, but is not limited to, all matters brought or which could have been brought, direct or contingent, liquidated or unliquidated, accrued or unaccrued, known or unknown, suspected or unsuspected, actual or potential, asserted or unasserted, patent or latent, matured or unmatured, including, but not limited to, in connection with all claims, complaints, counterclaims, cross-claims, and other claims for affirmative relief and defenses that have been or could have been raised in the pending action entitled: U.S. Security Associates, Inc. vs. Anastoyan Miller and Ann Marie Cummings, Case No. 17-cv-60224-BLOOM/Valle, pending in the United States District Court Southern District of Florida (the

"Action"), at law, in equity or otherwise, and any and all matters of any kind concerning, related to, or arising out of the matters referred to therein.

The Parties agree that, with the exception of actions or suits based upon a breach of any of the terms of this Mutual General Release, they will refrain from commencing any action or suit, or prosecuting any action or suit, in law or in equity, against the Plaintiff Releasees or the Defendant Releasees, respectively, on account of anything encompassed by this Release, including, but not limited to, any action or cause of action which now exists or that have been or could have been raised in connection with the subject Action, direct or contingent, liquidated or unliquidated, accrued or unaccrued, known or unknown, suspected or unsuspected, actual or potential, asserted or unasserted, patent or latent, matured or unmatured. In the event that an action of any kind is brought in connection with this Release, including, but not limited to, its creation, validity, interpretation, or enforcement, the prevailing party (as that phrase is interpreted under Florida law) shall be entitled to recover its reasonable costs, attorneys' fees and paralegal fees at all trial and appellate levels. This Release and its creation, validity, interpretation, or enforcement, shall be governed by and construed in accordance with the laws of the State of Florida without regard to its conflict of law provisions. Any action in connection with this Release can be brought only in a state or federal court of law located in the County of Palm Beach, State of Florida, exclusively.

This Release shall be binding upon and inure to the benefit of the Parties and their respective employees, agents, officers, directors, representatives, legal representatives, partners, stockholders, heirs, executors, administrators, predecessors and successors in interest, assigns, parents, subsidiaries, divisions, departments, affiliates, insurers, adjusters, and attorneys (i.e., the "Plaintiff Releasees" and the "Defendant Releasees," on the one hand, and the "Plaintiff Releasors" and the "Defendant Releasors, on the other hand, respectively).

All rights are cumulative under this Release.

The Parties acknowledge that this Release has not been executed in reliance upon any representation or promise except those contained in herein.

Each Party shall, upon the request of the other, execute and/or re-execute, acknowledge and deliver this Release and any and all papers or documents or other instruments, as may be reasonably necessary to implement the terms hereof with any formalities as may be required and, otherwise, shall cooperate to fulfill the terms hereof and enable the other parties to effectuate any of the provisions of this Release.

This Release shall not be construed against one Party or the other, solely because it may have been drafted initially by that Party or otherwise, both parties having participated in the drafting of this Release.

Any agreement to amend or modify the terms and conditions of this Release must be in writing and executed by the Parties.

The Parties acknowledge that each had the lawful authority and are fully competent to execute this Release on their own behalf or on behalf of the corporate entity, and that this Release was signed only after due consideration and consultation with his/her/its attorney(s).

In executing this Release, the Parties expressly acknowledge that they have not relied upon any oral or written statements or acts made by either, or their attorneys or agents, other than as expressly stated in writing herein.

The Parties each further warrant that there is nothing that would prohibit the other Party from entering into this Release.

This Release may be signed and delivered in counterparts via facsimile or e-mail which, taken together, may be deemed to be an original.

ACKNOWLEDGED AND AGREED TO BY:

_____   5-1-17
U.S. Security Associates, Inc.           Date
By: Oni Holley Bmm
Its: Asst. General Counsel


_____   _____
Anastoyan Miller                              Date


ACKNOWLEDGED AND AGREED TO BY:

_____   _____
U.S. Security Associates, Inc.           Date
By: _____
Its: _____


_____A Miller_____   __05/01/17__
Anastoyan Miller                              Date

DE 30-1.

To have an enforceable settlement agreement, the "terms must be sufficiently specific and mutually agreed upon as to every essential element." *Conte v. Winn Dixie Stores, Inc.*, No. 3:13-CV-463, 2014 WL 4693072, at *3 (N.D. Fla. Sept. 22, 2014); *Woodfield Plaza, LTD. v. Stiles Construction Co.*, 687 So. 2d 856, 857 (Fla. Dist. Ct. App. 1997). An essential term is determined

8

case by case and the court must look to the "nature and complexity of each transaction." *King v. Bray*, 867 So. 2d 1224, 1228 (Fla. Dist. Ct. App. 2004). The settlement agreement must "be clear that it is full and complete, covers all issues, and is understood by all litigants concerned." *Gaines v. Nortrust Realty Mgmt. Inc.*, 422 So. 2d 1037, 1040 (Fla. Dist. Ct. App. 1982) (internal citations and quotations omitted). Making a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having *meant* the same thing but on their having *said* the same thing.[2] *Blackhawk Heating & Plumbing Co. Inc. v. Data Lease Fin. Corp.*, 302 So. 2d 404, 407 (Fla. 1974) (internal citation and quotations omitted); *Perkins v. Simmons*, 15 So. 2d 289, 290 (Fla. 1943) ("The parties must mutually assent to each of the terms and conditions of both the offer and the acceptance in order to be a meeting of the minds and the closing of a lawful and binding contract."). Here, regardless of whether Plaintiff subjectively desired to release the claims in the instant case,[3] the language of the mutual general release is clear and unambiguous—he did release his claims. There is no ambiguity in the mutual release and, even if there was, Defendant represents—and Plaintiff does not dispute—that Plaintiff *drafted* the mutual general release. *See City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000) ("An ambiguous term in a contract is to be construed against the drafter.").[4]

In light of the clarity in the mutual general release, Plaintiff argues that the Court should look at the settlement agreement as a whole and, upon doing so, the Court will see that the mutual

---

2 Justice O.W. Holmes, *The Path of the Law,* 10 Harv. L. Rev. 457, 464 (1897).
3 Plaintiff presents a long narrative in his Motion pertaining to the history surrounding the drafting and execution of the parties' settlement agreement, however, while those facts may be pertinent to an argument seeking to set aside a contract, it is hornbook law that parol evidence is irrelevant when the provisions in a contract are clear and unambiguous. *See, e.g.*, *Sears v. James Talcott, Inc.*, 174 So. 2d 776, 778 (Fla. Dist. Ct. App. 1965) ("The parol evidence rule serves as a shield to protect a valid, complete and unambiguous written instrument from any verbal assault that would contradict, add to, or subtract from it, or affect its construction.").
4 Although the mutual general release—an attachment to the settlement agreement—states that ambiguity in the release may not be construed against the drafter, the body of the overarching settlement agreement contains no such provision protecting the drafter.

9

general release was never intended to cover the instant case or, alternatively, that there is ambiguity or a conflict in the settlement agreement. The Court does not agree. The proposal for settlement, ultimately accepted by Defendant, stated: "This Proposal includes and seeks to settle Plaintiff's claims asserted in the Complaint as may be amended in this matter. This Proposal includes, and seeks to settle, all claims made by Plaintiff against Defendant, in the instant case and any counterclaims that Defendant may have against Plaintiff in the instant case." DE 32-2 at 1. Thus, the language in the settlement agreement merely indicates that the settlement would release all claims in case 17-CV-60224. Nothing in the proposal indicates that the settlement would be *limited* to the claims in that case and, in lieu of such a limitation, the settlement agreement says that the released claims will "include" the claims in case 17-CV-60224. In order for the claims in case 17-CV-60224 to be released, the settlement agreement requires "[t]he execution and exchange of the Mutual General Release" attached to the settlement agreement which, as set forth above, released the parties from all claims from the beginning of time. *Id.* at 2. Thus, the vehicle by which *Plaintiff* proposed case 17-CV-60224 would be settled was a mutual general release which clearly, by its own terms, mutually released *all* claims between the parties. It is a common, every-day occurrence for parties to release each other from claims beyond the scope of the litigation that generated the settlement agreement. It is also common for settling parties to mutually release each other from all possible claims when—as is the case here—both the plaintiff and the defendant face potential liability. The Court sees no conflict in the terms of the mutual general release and other terms in the settlement agreement nor is there any ambiguity.

Applying the unambiguous settlement agreement to the instant case, in Florida, courts favor settlement agreements and will enforce them when it is possible to do so. *Murchison v.*

*Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994); *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985). To halt enforcement of the settlement agreement, Plaintiff argues that, procedurally, Defendant is required to raise as an affirmative defense the existence of the settlement agreement between the parties and then file a motion for summary judgment on that defense. However, this Court has an obligation to *sua sponte* inquire into whether it has before it a justiciable case or controversy. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *W. World Ins. Co. v. Jones*, No. 3:15-CV-1379, 2016 WL 9149510, at *4 (M.D. Fla. Feb. 9, 2016). Accordingly, the Court examines whether the unambiguous mutual general release in this case has had the result of eliminating all justiciable controversy between the parties.

Plaintiff does not argue that the settlement agreement should be set aside due to fraud, mutual mistake, or any other such defense.[5] Although Plaintiff facially advances the argument in the instant Motion that there is no settlement agreement between the parties *at all*, the substance of Plaintiff's argument on this matter has no merit. Plaintiff made a written offer to Defendant. Defendant accepted. Plaintiff argues there is no meeting of the minds because:

> [Defendant's] acceptance of the [offer] did not mirror the terms of the offer. [Plaintiff's] offer . . . explicitly sought to resolve [case 17-CV-60224] and any of [Plaintiff's] counterclaims in [case 17-CV-60224] for $100; it did not include terms, nor was there an intent, to resolve [the instant case]. On May 1, 2017, Defendant purportedly accepted Plaintiff's [offer], but on May 4 indicated that acceptance resolved both [case 17-CV-60224] and [the instant case].

---

5 Plaintiff does not seek rescission for unilateral mistake or any other ground in his Motion. To the extent Plaintiff attempts to request a new form of relief—rescission—in his reply brief, Local Rule 7.1(c) strictly prohibits a party from seeking new relief or raising new arguments in a reply brief. ("[R]eply memorandum shall be strictly limited to rebuttal of matters raised in the memorandum in opposition."); *see also Martinez v. Weyerhaeuser Mort. Co.*, 959 F. Supp. 1511, 1515 (S.D. Fla. 1996). However, the Court notes that for a party to rescind an agreement based upon unilateral mistake, the mistake must have been induced by the party seeking to benefit from the mistake. *Lechuga v. Flanigan's Enters., Inc.*, 533 So. 2d 856, 857 (Fla. Dist. Ct. App. 1988). Here, Plaintiff is the one who drafted and offered the settlement agreement—any mistake could not have been induced by Defendant. Defendant accepted *Plaintiff's* settlement agreement, and Florida courts reject unilateral drafting mistakes by attorneys as a basis for rescission because a unilateral mistake cannot result from an inexcusable lack of due care. *See, e.g.*, *BMW of N. Am., Inc. v. Krathen*, 471 So. 2d 585, 588 (Fla. Dist. Ct. App. 1985).

DE 32 at 9. Stated simply, it is Plaintiff's position that because Defendant used the mutual general release in the instant case, there is no settlement agreement between the parties because Plaintiff never intended to release any claims in the instant case. Thus, what Plaintiff is really saying is that there is no settlement agreement because Defendant did not accept the terms that *Plaintiff intended*. Even if that is true, it is irrelevant under the law. *Gendzier v. Bielecki*, 97 So. 2d 604, 608 (Fla. 1957) ("The writing itself is the evidence of what [the parties] meant or intended by signing it."). As discussed above, the terms of the mutual general release were clear, there was no ambiguity in the mutual general release, the mutual general release does not conflict with any term in the settlement agreement as a whole, the mutual general release resolved every possible claim between the parties from the beginning of time, and Plaintiff was responsible for drafting the terms of the settlement agreement and the mutual general release.

In summary, Plaintiff raises no valid argument that there was no meeting of the minds. The terms and existence of the mutual general release are not in dispute. The settlement agreement has not been set aside nor has Plaintiff moved to do so. Once parties reach a settlement agreement, a federal court must dismiss a case without prejudice, at a minimum,[6] because there is no longer a case or controversy sufficient to invoke the jurisdiction of the court under Article III of the Constitution. *Londono v. City of Gainesville*, 768 F.2d 1223, 1227 (11th Cir. 1985); *see In re Melo*, 558 B.R. 521, 555-56 (D. Mass. Bankr. 2016). Accordingly, for all of the reasons set forth above the Court concludes that it no longer possesses subject matter jurisdiction over this case because there is no longer a case or controversy and, as a result, Plaintiff's Motion for

---

6 A court may also enter in a consent judgment, decree, or dismissal, which is what the Court believed the parties had requested when the Court entered in its earlier order of dismissal. *See Londono v. City of Gainesville*, 768 F.2d 1223, 1227 (11th Cir. 1985).

Reconsideration is **DENIED IN PART** insofar as Plaintiff's claims are hereby **DISMISSED WITHOUT PREJUDICE**.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 4th day of August, 2017.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE